# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01863-NYW

DENNIS RUSSELL HOOPER,

    Plaintiff,

v.

YAMPA VALLEY MEDICAL CENTER, and
LAILA WILBER POWERS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

This matter comes before the court on two pending motions:

(1) Defendants Yampa Valley Medical Center and Dr. Laila Powers's Motion for Summary Judgment, filed April 5, 2019, [#36]; and

(2) Plaintiff Dennis Hooper's Motion for Court Appointed Expert Witness (the "Motion to Appoint Expert"), filed May 3, 2019, [#43].

The court considers the Motions pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes dated October 26, 2018, [#15]. The court concludes that oral argument would not materially assist in the resolution of this matter. Accordingly, upon review of the Motions, related briefing, the record, and the applicable case law, the court **GRANTS** the Motion for Summary Judgment and **DENIES** the Motion to Appoint Expert.

## MATERIAL FACTS

The court draws the following material facts from the record before the court. These material facts are undisputed.

1.      On or about February 8, 2016, Plaintiff Dennis Hooper ("Plaintiff" or "Mr. Hooper"), a citizen of Oregon who is paraplegic, presented to the emergency room of Yampa Valley Medical Center ("YVMC") in Steamboat Springs, Colorado, complaining of a "severely swollen upper right leg." *See* [#1 at 5; #23-2 at 2, 4].

2.      Defendant Laila Powers ("Dr. Powers") was the attending emergency room physician at YVMC and received Mr. Hooper upon his arrival. *See* [#1 at 5; #23-2 at 2, 4].

3.      According to Plaintiff, Dr. Powers was "not familiar with spinal cord injuries or associated paraplegia," and was not qualified to "examine and render medical treatment to a patient with known paraplegia." [#23-2 at 2].

4.      Dr. Powers allegedly "ordered blood tests and an ultrasound to determine the cause of the swelling, but no x-rays were done"; Dr. Powers diagnosed Plaintiff's swelling as Deep Vein Thrombosis, and released Plaintiff that same day. *See* [#1 at 5; #23-2 at 4].

5.      Several days later, Plaintiff returned home to Portland, Oregon, but because the swelling in his leg persisted, he sought additional medical treatment in the emergency room at the Portland, Oregon Veteran's Administration hospital. *See* [#1 at 5; #23-2 at 4].

6.      Physicians at the Veteran's Administration hospital took x-rays of Plaintiff's right leg and determined that Mr. Hooper's "right femur had a shear fracture above the knee." [#1 at 5].

7.      Mr. Hooper underwent surgery for the installation of "a stabilization rod and hardware" on or about February 15, 2016; Mr. Hooper underwent two additional surgeries "to partially remove some of the hardware[,]" and subsequent tests determined that there was no Deep Vein Thrombosis present. *See* [*id.*].

8. On July 23, 2018, Plaintiff initiated the instant action by filing his *pro se* Complaint in this District pursuant to 28 U.S.C. § 1332, asserting a claim for medical malpractice against YVMC and Dr. Powers (collectively, "Defendants"). *See generally* [#1].[1]

9. On November 9, 2018, the Clerk of the Court docketed Plaintiff's Certificate of Review, signed and dated November 2, 2018, wherein Mr. Hooper certified that he "consulted two orthopedic surgeons who have expertise in the relevant area of medicine pertaining to [his] complaint"; that the two orthopedic surgeons reviewed all materials relevant to Plaintiff's allegations of negligence; and that the two orthopedic surgeons "meet the requirements of C.R.S. § 13-20-602." [#18].

10. Defendants filed a Motion to Dismiss for Failure to File a Certificate of Review (the "Motion to Dismiss") on November 29, 2018. *See* [#23].

11. On March 8, 2019, the court granted in part and denied in part the Motion to Dismiss, holding that Mr. Hooper's medical malpractice claim "requires expert testimony" as to the applicable standard of care, and directing Mr. Hooper to file an Amended Certificate of Review "with information from one or both orthopedic surgeons with whom he conferred to establish that one or both is qualified, e.g., through training, experience, education, or because emergency medicine is not considered a specialty area, to opine as to the standard of care applicable to Dr. Powers." *See* [#30 at 6, 8].

12. Mr. Hooper filed identical Amended Certificates of Review on March 28, 2019, which indicated that he had "consulted with a physician who is qualified to consult on emergency room procedures." [#33; #34].

---

[1] The Honorable Gordon P. Gallagher granted Plaintiff leave to proceed *in forma pauperis*, *see* [#4], and had this matter drawn to the undersigned on August 27, 2018, *see* [#6].

13. Per the Parties' Joint Motion for an Extension of Time, the court extended the deadline for the Parties to designate all affirmative experts to April 1, 2019. *See* [#29].

14. On or about April 1 or 2, 2019, Plaintiff provided notice to Defendants that "plaintiff does not expect to utilize retained or non-retained experts[,]" instead relying on his initial witness disclosures. *See* [#36-2; #36-3].

15. Defendants filed the instant Motion for Summary Judgment on April 5, 2019, arguing that Plaintiff's failure to disclose an affirmative expert is fatal to his medical malpractice claim. *See* [#36].

16. On May 3, 2019, Mr. Hooper filed the instant Motion to Appoint Expert, requesting that the court appoint an expert pursuant to Rule 706 of the Federal Rules of Evidence. *See* [#43].

## ANALYSIS

### I. Motion to Appoint Expert

Because Plaintiff's Motion to Appoint Expert could impact the court's resolution of Defendants' Motion for Summary Judgment, I first consider whether the court should appoint Mr. Hooper an expert pursuant to Rule 706 of the Federal Rules of Evidence. For the following reasons, I **DENY** the Motion to Appoint Expert.

#### A. Legal Standard

Rule 706 of the Federal Rules of Evidence provides, in pertinent part, "On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations." Fed. R. Evid. 706(a). Rule 706, however, offers no explicit guidance as to when the court should appoint an expert. *See Nagim v. Equifax Info. Servs., LLC*, No. 09-CV-02428PABKLM, 2010 WL 466757, at *1 (D. Colo. Feb. 9, 2010). Rather, the decision to appoint an expert witness rests with the sound discretion of the

district court. *See United States v. Sloan*, 65 F.3d 861, 864 (10th Cir. 1995). In certain, albeit rare, instances a court will appoint an expert to assist the court "in evaluating contradictory or complex evidence or issues." *McClendon v. City of Albuquerque*, No. 95 CV 024 JAP/ACT, 2015 WL 13667177, at *4 (D.N.M. Oct. 13, 2015). Indeed, invocation of Rule 706 "should be reserved for truly extraordinary cases where the introduction of outside skills and expertise, not possessed by the judge, will hasten the just adjudication of a dispute without dislodging the delicate balance of the juristic role." *Reilly v. United States*, 863 F.2d 149, 156 (1st Cir. 1988).

### B. Application

Mr. Hooper requests that the court appoint an expert pursuant to Rule 706 of the Federal Rules of Evidence, because he proceeds *pro se* and *in forma pauperis* and Defendants retained "witnesses in rebuttal of plaintiff's claim regarding the misdiagnosis of a [Deep Vein Thrombosis]." [#43 at ¶¶ 1-3]; *see also* [#50]. Defendants oppose the Motion to Appoint Expert, arguing that courts appoint an expert under Rule 706 rarely and only when the issues are complex, which is not true in this case, and that the time to designate an expert has since passed and Plaintiff fails to demonstrate excusable neglect justifying an extension of time to designate an expert. *See* [#45]. In his Reply, Mr. Hooper clarifies that he does not request that the court appoint him an expert, but rather that the court appoint an expert "to aid the Court in determining *if* expert testimony would be beneficial at trial." [#50 at 2 (emphasis in original)]. Further, Mr. Hooper asserts, that this expert would verify that "it is scientifically impossible to estimate the time a fracture occurred[,]" leaving it for the jury to decide, based on other evidence, whether Defendants misdiagnosed Plaintiff's right femur shear fracture. *See* [*id.* at 2, 4]. For the following reasons, I respectfully conclude that a court-appointed expert is unnecessary under the circumstances.

5

To start, I find that the issue in this medical malpractice case is not too complex thereby requiring the use of a court-appointed expert to assist <u>the court</u>. Rather, the crux of Mr. Hooper's claim—the misdiagnosis of his right femur shear fracture—appears straightforward enough, but still requires expert testimony for the court to weigh as to the requisite standard of care applicable to Defendants. *See* [#30]. This alone, however, does not render the issue too complex for the court's comprehension, *see Safe Streets All. v. Alternative Holistic Healing, LLC*, No. 15-CV-00349-REB-SKC, 2018 WL 3861156, at *3 (D. Colo. Aug. 14, 2018) ("Although Fed. R. Evid. 706 allows the court to appoint its own expert, that discretionary authority is reserved for exceptional cases that present unwieldy, complex, or technical issues or when there is a need for an impartial, independent assessment of a disputed issue," (internal quotation marks omitted)), and this is not the same as requiring a separate expert to assist <u>the court</u> in weighing other expert opinions. Nor does Defendants' retention of rebuttal witnesses affect the court's conclusion. *See Rachel*, 820 F.3d at 398 ("[I]t cannot follow that a court must therefore appoint an expert under Rule 706 whenever there are allegations of medical malpractice." (internal quotation marks omitted)).

In addition, Rule 706(c)(2) places the costs on compensating the court-appointed expert on the parties. Fed. R. Evid. 706(c)(2). Because Mr. Hooper proceeds *in forma pauperis*, either Defendants or the court itself would bear the cost of the court-appointed expert. But Mr. Hooper fails to justify why either option is necessary or appropriate under the circumstances. *Cf. Custard v. Osagie*, No. CIVA 06-cv-01114-WYD-CBS, 2008 WL 4838565, at *1 (D. Colo. Nov. 6, 2008) ("The right of access to the courts does not extend to provide witness fees for a witness an *in forma pauperis* prisoner claims to be essential to his case."). Indeed, the court has made clear Mr. Hooper's need for an expert since March 8, 2019, and provided the Parties an additional month to

procure affirmative experts. And in his Amended Certificates of Review, Mr. Hooper represented to the court that he had consulted with a professional who had reviewed the facts, and presumably (despite the necessary language in even the Amended Certificates of Review), had concluded that the filing of the claim did not lack substantial justification as required by Colo. Rev. Stat. §§ 602(3)(a)(I)-(II), 602(3)(c). *Compare* [#33; #34] *with* [#30 at 3-4, 9] (discussing the requirements of the Certificate of Review)].

The Federal Rules of Civil Procedure do not require a party to engage a specially-retained expert. Fed. R. Civ. P. 26(a)(2)(C). But despite the court's conclusion that Mr. Hooper's medical malpractice claim required expert testimony, Mr. Hooper represented that he would not endorse an expert by the required deadline. *See, e.g.*, [#36-2; #45-4 at 2]. And although he now requests that the court appoint an expert, "[t]he appointment of an expert pursuant to Rule 706 is not intended to further partisan interests of any party, but to aid the Court, through the services of an impartial expert in its assessment of technical issues." *Duran v. Curry Cnty. Adult Det. Ctr.*, No. 09-CV-0758 MCA/SMV, 2013 WL 12172042, at *11 (D.N.M. Aug. 30, 2013) (internal quotation marks omitted). Thus, I decline to appoint a witness under Rule 706.

## II. Motion for Summary Judgment

Defendants move for summary judgment because Mr. Hooper's failure to endorse an affirmative expert is fatal to his medical malpractice claim. *See* [#36; #44]. As he did in his Response to the Motion to Dismiss, Mr. Hooper contends that his medical malpractice claim does not require expert testimony to establish that Defendants violated the applicable standard of care. *See* [#42]. For the following reasons, I **GRANT** the Motion for Summary Judgment.

7

## A. Legal Standard

Pursuant to Rule 56, the court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted). It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). And though the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant[,]" *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016), the nonmovant must point to competent summary judgment evidence, *see Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004), and may not rely on "mere reargument of his case or a denial of an opponent's allegation[,]" *see* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998). Because Mr. Hooper proceeds *pro se*, the court liberally construes his pleadings, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), but does not act as his advocate and applies the same procedural rules and substantive law to Plaintiff as to a represented party, *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008).

## B. Application

In Colorado, medical malpractice actions are a subset of negligence actions and thus require a plaintiff to "show a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and that the defendant's breach caused the plaintiff's injury." *Day v. Johnson*, 255

P.3d 1064, 1068-69 (Colo. 2011). Establishing the requisite duty of care depends on whether the physician-defendant is a nonspecialist or specialist. *See Hall v. Frankel*, 190 P.3d 852, 858 (Colo. App. 2008) ("Physicians who practice a medical specialty are required to possess a higher degree of skill within that specialty than would a general practitioner or a practitioner in another specialty."). "A nonspecialist physician must act consistently with the standards required of the medical profession in the community where he or she practices[,]" whereas "a physician who holds himself or herself out as a specialist in a particular field of medicine is measured against a standard commensurate with that of a reasonable physician practicing in that specialty." *Jordan v. Bogner*, 844 P.2d 664, 666 (Colo. 1993).

"A physician possessing ordinary skill and exercising ordinary care in applying it is not responsible for a mistake of judgment." *Basanti v. Metcalf*, No. 11-CV-02765-PAB-NYW, 2015 WL 868758, at *27 (D. Colo. Feb. 26, 2015) (citing *Bonnet v. Foote*, 107 P. 252, 254 (Colo. 1910)). Indeed, a poor outcome is insufficient to prove negligence. *See Day*, 255 P.3d at 1069. Mr. Hooper must instead prove a breach of the duty of care, "'measured by whether a reasonably careful physician of the same school of medicine as the defendant would have acted in the same manner as did the defendant in treating and caring for the patient.'" *Gallardo v. United States*, 752 F.3d 865, 871 (10th Cir. 2014) (quoting *Day*, 255 P.3d at 1069)). To be sure, there may be instances where a medical malpractice claim "lies within the ambit of common knowledge or experience of ordinary persons," but "matters relating to medical diagnosis and treatment ordinarily involve a level of technical knowledge and skill beyond the realm of lay knowledge and experience," requiring expert opinion testimony. *Melville v. Southward*, 791 P.2d 383, 387 (Colo. 1990). As before, I find that Mr. Hooper's claim requires expert testimony.

Mr. Hooper asserts that Defendants were negligent given Dr. Powers's failure to conduct an x-ray of Mr. Hooper's right leg and diagnosis and treat his right femur shear fracture. *See* [#1]. Mr. Hooper argues that his Amended Certificate of Review creates a genuine issue of material fact for a jury to decide, that his medical records are clear and concise such that a layperson could determine Defendants' negligence, and that his injury was so obvious that there is no need for expert testimony. *See* [#42 at 2-6]. Defendants argue, and the court agrees, that Mr. Hooper bears the burden of establishing the requisite standard of care that Defendants allegedly breached, which requires the use of an expert. *See* [#36 at 4; #44 at 1-2].

Mr. Hooper argues that "an expert cannot testify whether plaintiff had a broken leg on February 8, 2016, or not," and therefore his claim should proceed to trial. [#50 at 2]. But the operative question is not whether Mr. Hooper had a broken leg when he presented to Dr. Powers on February 8, 2016. Rather, the operative question is whether Dr. Powers deviated from the applicable standard of care when Mr. Hooper, a paraplegic, presented with certain symptoms and she did not order an x-ray.

It is undisputed that Plaintiff did not retain an expert to opine on this question. *See* [#36-2; #36-4 at 139:21-140:8;[2] #36-5 at 143:2-9]. And as it previously held, the court finds that Plaintiff's medical malpractice claim requires an expert to establish the requisite standard of care, because the Plaintiff's injury was not so obvious that there is no need of an expert. Indeed, the medical records provided by Plaintiff in his Response to the Motion for Summary Judgment do not demonstrate Defendants' negligence in the absence of expert testimony explaining the significance of such records or the medical findings therein. And as Mr. Hooper indicated in his

---

[2] When citing to a transcript, the court cites to the document number generated by the court's Electronic Court Filing system but the page and line number generated by the transcript.

Reply to the Motion to Appoint Expert, there appears to be a material question of fact as to whether Mr. Hooper even had a broken leg when he presented to Dr. Powers on February 8, 2016. [#50 at 2].

Further, Mr. Hooper was aware as of March 8, 2019 that he bore the burden of establishing the applicable standard of care with an expert witness, and the court provided the Parties an extension of time to designate such experts to April 1, 2019. *See* [#29; #30]. Mr. Hooper failed to do so, and even testified at his deposition that he did not intend to consult an emergency room physician as to the applicable standard of care in relation to his medical malpractice claim. *See* [#36-5 at 142:16-143:9]. Nor did Plaintiff's Amended Certificates of Review contain "information from one or both orthopedic surgeons with whom he conferred to establish that one or both is qualified, e.g., through training, experience, education, or because emergency medicine is not considered a specialty area, to opine as to the standard of care applicable to Dr. Powers." [#30 at 8]; *cf.* [#33; #34]. And as discussed, the court declines to appoint an expert on Mr. Hooper's behalf.

Because Plaintiff has not retained an expert to provide testimony as to the standard of care applicable to Defendants, he cannot prove an essential element of his medical malpractice claim. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (explicating that when the movant makes a prima facie demonstration as to a lack of evidence supporting an essential element of the nonmovant's claim, it is the nonmovant's burden "to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence" to create a genuine issue of material fact). Accordingly, summary judgment shall enter in favor of Defendants and against Plaintiff. *See J. Lee Browning Belize Tr. v. Lynton*, No. 16-CV-02078-NYW, 2019 WL 176825, at *4 (D. Colo. Jan. 11, 2019) ("Because damages are an essential element of Plaintiff's breach of fiduciary

11

duty claim and because Belize Trust offers no competent summary judgment evidence establishing the factual existence of its damages, summary judgment in favor of Defendants is warranted.").

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) Defendants' Motion for Summary Judgment [#36] is **GRANTED**;

(2) Summary judgment shall enter in **FAVOR** of Defendants and **AGAINST** Plaintiff, and Plaintiff's Complaint [#1] and medical malpractice claim shall be **DISMISSED with prejudice**;

(3) Final Judgment shall enter in **FAVOR** of Defendants and **AGAINST** Plaintiff, and the Clerk of the Court shall terminate this matter accordingly; and

(4) Each party shall bear his, her, or its own costs and fees.[3]


DATED: May 17, 2019

BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge

---

[3] While costs should generally "be allowed to the prevailing party," Fed. R. Civ. P. 54(d)(1), the district court may in its discretion decline to award costs where a "valid reason" exists for the decision. *See, e.g., In re Williams Securities Litigation-WCG Subclass*, 558 F.3d 1144, 1147 (10th Cir. 2009) (citations omitted). Because the court concludes that Mr. Hooper failed to carry his burden as to the applicable standard of care, but not that Mr. Hooper's medical malpractice claim fails on the merits, and because Plaintiff is indigent, the court declines to award costs. *See Cantrell v. Int'l Bhd. of Elec. Workers, AFL-CIO, Local 2021*, 69 F.3d 456, 459 (10th Cir. 1995) (noting that there is no abuse of discretion when the district court denies fees "to a party that was only partially successful."); *Shapiro v. Rynek*, 250 F. Supp. 3d 775, 779 (D. Colo. 2017) ("[A] district court does not abuse its discretion in denying costs when . . . the non-prevailing party is indigent.").